# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# NORFOLK DIVISION

|  |  |
|---|---|
| ARCH INSURANCE COMPANY, Individually and as subrogee of FAMILY DOLLAR TRUCKING, INC., <br><br> Plaintiff, <br><br> v. <br><br> WERNER ENTERPRISES, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) Civil Action No.: 2:20-cv-434 ) ) ) ) ) ) |

## COMPLAINT

Plaintiff, Arch Insurance Company ("Arch"), individually and as subrogee of Family Dollar, Trucking, Inc. ("Family Dollar"), for its Complaint against Defendant Werner Enterprises, Inc. ("Werner"), alleges as follows:

### I.   Parties

1. Arch is a Missouri corporation with its principal place of business in Jersey City, New Jersey.

2. Defendant Werner is a Nebraska corporation with its principal place of business in Omaha, Nebraska.

### II.   Jurisdiction and Venue

3. This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1332(a) as complete diversity exists between the parties and the amount in controversy exceeds the sum of value of $75,000.00, exclusive of interest and costs.

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to this action occurred within this jurisdiction.

### III.    Facts

5.      This matter arises out of a dispute with respect to the obligations that Werner and ACE American Insurance Company ("ACE") owe to Family Dollar relating to a lawsuit captioned *Judson Charles Williams v. Family Dollar Trucking, Inc.*, Cause No. CV17-1344, pending in the 43rd Judicial District Court for Parker County, Texas (the "Williams Lawsuit"). Werner was required by a Master Transportation Agreement to name Family Dollar as an additional insured on a primary Truckers/Auto Liability insurance policy providing limits of $1 million ($1,000,000) per occurrence.

6.      In material breach of its contractual obligation to procure additional insured coverage for Family Dollar, Werner procured an ACE Excess Business Truckers/Auto Liability policy that (1) is an indemnity-only that does not provide coverage for defense expenses incurred in the defense of a claim or lawsuit and (2) is excess to a $1 million ($1,000,000) "retained limit" that must be paid by Werner before the policy's limits of insurance become applicable.

7.      As a result of Werner's material breach of contract, Arch, which issued a business auto policy to Family Dollar, has provided Family Dollar with a defense to the Williams Lawsuit and settled the Williams Lawsuit on Family Dollar's behalf. To remedy Werner's material breach of contract, Arch seeks an order compelling Werner to reimburse Arch and Family Dollar for fees and expenses incurred in defending and settling the Williams Lawsuit.

**The Master Transportation Agreement**

8. Family Dollar and Werner entered into the Family Dollar Trucking, Inc., Master Transportation Agreement (the "Agreement") effective January 31, 2016. A true and correct copy of the Agreement is attached hereto as Exhibit A.

9. The Agreement sets forth certain responsibilities and duties imposed upon and undertaken by Werner, a company engaged in the business of transporting goods, brokering freight, and arranging for the transportation of goods by third-party motor carrier, in connection with Werner's transportation of goods to various Family Dollar distribution centers, stores, and related facilities as may be agreed to by the parties.

10. Section 8 of the Agreement provides as follows:

> **8.     Insurance**. Transporter must carry, and must require any End Carrier to carry, at its own expense throughout the term of this Master Agreement, the types and amounts of insurance coverage set forth on Exhibit F; provided, however, that End Carriers shall not be required to carry umbrella liability insurance and shall only be required to carry $100,000 in cargo insurance.

11. Exhibit F to the Agreement provides as follows:

**EXHIBIT F**

**INSURANCE REQUIREMENTS**

Transporter agrees to maintain the following insurance coverages during the term of this Master Agreement:

Truckers/Auto Liability $1,000,000 per occurrence

General Liability       $1,000,000 per occurrence/$2,000,000 aggregate

Employers Liability     $500,000 each accident
                        $500,000 policy limit
                        $500,000 each employee

    Umbrella Liability    $5,000,000 per occurrence

    Cargo Insurance    $250,000 per shipment

Insurance must be maintained with an "A-" or better rated Insurance Company as published by A.M. Best Co. Transporter agrees to provide Family Dollar with a certificate of insurance showing above limits, to name Family Dollar as an *additional insurance for the purpose of truckers, general liability, and cargo liability* on the truckers and general liability policies, and to provide Family Dollar with 30 days notice of cancellation of coverage.

12.    Section 10(a) of the Agreement provides as follows:

    **10.    Indemnification**.

    **(a)    TRANSPORTER WILL INDEMNIFY, REIMBURSE AND HOLD HARMLESS FAMILY DOLLAR, ITS PARENT COMPANY, SUBSIDIARIES, AND AFFILIATES, AND EACH OF THEIR RESPECTIVE DIRECTORS, OFFICERS, REPRESENTATIVES, AGENTS, AND EMPLOYEES (EACH AN "INDEMNIFIED PARTY", AND COLLECTIVELY, THE "INDEMNIFIED PARTIES") FROM AND AGAINST ALL CLAIMS, DAMAGES, LIABILITIES, LOSSES, COSTS AND EXPENSES (INCLUDING, BUT NOT LIMITED TO REASONABLE ATTORNEYS' FEES AND EXPENSES, INCLUDING ANY REASONABLE ATTORNEYS' FEES AND EXPENSES INCURRED BY AN INDEMNIFIED PARTY IN ENFORCING TRANSPORTER'S INDEMNIFICATION OBLIGATION UNDER THIS MASTER AGREEMENT) (COLLECTIVELY , "DAMAGES"), SUSTAINED BY ANY INDEMNIFIED PARTY BY REASON OF: (I) BODILY INJURY, SICKNESS OR DEATH TO THIRD PARTIES OR ANY DAMAGES TO THE PROPERTY OF FAMILY DOLLAR, TRANSPORTER, END CARRIER, OR THIRD PARTIES, TO THE EXTENT ARISING OUT OF, RELATED TO OR IN ANY MANNER OCCASIONED BY THE NEGLIGENCE, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF TRANSPORTER OR ANY END CARRIER, OR ANY OF THEIR RESPECTIVE OFFICERS, EMPLOYEES, AGENTS, OR AFFILIATES, CONTEMPLATED BY, OR TAKEN PURSUANT TO, THIS MASTER AGREEMENT, OR (II) ANY MATERIAL BREACH BY TRANSPORTER OF, OR FAILURE OF ANY END CARRIER TO COMPLY WITH THE OBLIGATIONS CONTAINED IN, THIS MASTER AGREEMENT. THE PARTIES ACKNOWLEDGE AND AGREE THAT NOTWITHSTANDING THE FOREGOING, IN THE EVENT A COURT OF COMPETENT JURISDICTION HOLDS THAT A STATUTE LIMITING THE SCOPE OF TRANSPORTER'S INDEMNIFICATION OBLIGATIONS UNDER THIS MASTER AGREEMENT IS APPLICABLE TO THE PERFORMANCE OF TRANSPORTER UNDER OR PURSUANT TO THIS MASTER**

> **AGREEMENT, TRANSPORTER'S INDEMNIFICATION OBLIGATIONS UNDER THIS MASTER AGREEMENT WILL ONLY EXTEND TO THE EXTENT PERMITTED BY SUCH STATUTE. TRANSPORTER ACKNOWLEDGES THAT ITS INDEMNIFICATION OBLIGATIONS UNDER THIS MASTER AGREEMENT WILL EXTEND AND APPLY TO DAMAGES RESULTING FROM DIRECT CLAIMS BY ANY INDEMNIFIED PARTY AS WELL AS ANY DAMAGES AN INDEMNIFIED PARTY SUFFERS AS A RESULT OF ANY THIRD-PARTY CLAIMS (INCLUDING BUT NOT LIMITED TO ANY CLAIMS BY ANY END CARRIER). FOR THE AVOIDANCE OF DOUBT, TRANSPORTER IS NOT OBLIGATED TO INDEMNIFY OR HOLD HARMLESS AN INDEMNIFIED PARTY AGAINST ANY DAMAGES ARISING OUT OF, RELATED TO OR IN ANY MANNER OCCASIONED BY THE NEGLIGENCE, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF ANY INDEMNIFIED PARTY. NOTWITHSTANDING THE FOREGOING, ALL CLAIMS FOR LOSS AND/OR DAMAGE TO ANY GOODS OR FAMILY DOLLAR PROVIDED TRAILERS OR EQUIPMENT SHALL BE GOVERNED BY <u>SECTION 9</u> OF THIS MASTER AGREEMENT. TRANSPORTER COVENANTS NOT TO SETTLE ANY MATTER UNDER THIS INDEMNITY WITHOUT OBTAINING THE PRIOR WRITTEN CONSENT OF FAMILY DOLLAR.**

13. Section 13 of the Agreement provides that "[e]ach Party expressly and irrevocably consents to the exclusive venue and jurisdiction of the state and federal courts located in Norfolk, Virginia."

**The Ace Policy**

14. ACE issued an Excess Business Truckers/Auto Liability Policy, number XSA H09044486, to Werner for the policy period of August 1, 2016 to August 1, 2017 (the "ACE Policy"). A true and accurate copy of the ACE Policy is attached hereto as Exhibit B.

15. The ACE Policy provides Limits of Insurance of $1 million ($1,000,000) and is subject to a $1 million ($1,000,000) "retained limit".

16. Werner is the "Named Insured" in the Declarations of the ACE Policy.

17. The ACE Policy provides that "[t]hroughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations."

18. Section II of the ACE Policy provides, in relevant part, as follows:

5

## SECTION II – LIABILITY COVERAGE

A. **COVERAGE**

i. We will pay the "insured" for the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

\* \* \*

iii. This policy does not apply to defense, investigation, settlement, or legal expenses, or prejudgment interest arising out of any "accident" but we shall have the right and opportunity to assume form the "insured" the defense and control of any claim or "suit", including any appeal from a judgment, seeking payment of damages covered under this policy arising out of such "accident" that we believe likely to exceed the "retained limit". In such event the "insured" shall cooperate fully.

\* \* \*

**1. WHO IS AN INSURED**

The following are "insureds":

**a.** You for any covered "auto."

\* \* \*

C. **LIMIT OF INSURANCE**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for "ultimate net loss" in excess of the "retained limit" for damages and "covered pollution costs or expense" combined resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

\* \* \*

You agree to assume payment of the "retained limit" before the Limits of Insurance become applicable.

6

19. Endorsement No. 2 to the ACE Policy states, in relevant part, as follows:

    Additional Insured(s): <u>Any person or organization whom you have agreed to include as an additional insured under a written contract, provided such contract was executed prior to the date of loss.</u>

    A. For a covered "auto," Who Is Insured is amended to include as an "insured," the persons or organizations named in this endorsement. However, these persons or organizations are an "insured" only for "bodily injury" or "property damage" resulting from acts or omissions of:

        1. You.

        2. Any of your "employees" or agents.

        3. Any person operating a covered "auto" with permission from you, any of your "employees" or agents.

    B. The persons or organizations named in this endorsement are not liable for payment of your premium.

20. Endorsement No. 12 to the ACE Policy states, in relevant part, as follows:

    1. **WHO IS AN INSURED** (Section II) is amended to include any person(s) or organization(s) for whom you have agreed in a written contract to provide insurance but only for damages:

        a. Which are covered by this insurance; and

        b. Which you have agreed to provide in such contract.

    2. The limits of insurance afforded to such person(s) or organization(s) will be:

      a.      The minimum limits of insurance which you agreed to provide, or

      b.      The limits of insurance of this policy

whichever is less.

21.    The ACE Policy contains the following "Other Insurance" provision in the Excess Business Auto Coverage Form and an amended provision in Endorsement No. 33:

**B.    GENERAL CONDTIONS**

\*    \*    \*

**3.    OTHER INSURANCE**

If other insurance is available to the "insured" for a loss we cover under this policy, this insurance is excess over that other insurance, unless that insurance is written specifically to apply in excess of the Limits of Insurance shown in the Declarations of this policy.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

    **(1)**    The total amount that all such other insurance would pay for the loss in the absence of this insurance;

    **(2)**    The total of all deductible and self-insured amounts under all that other insurance; and

    **(3)**    The "retained limit" shown in the Declarations of this policy.

Nothing herein shall be construed to make this policy subject to the terms, conditions and limits of other insurance.

\*    \*    \*

**UNDERLYING COVERAGE ERODES RETAINED LIMIT**

**This endorsement modifies insurance provided under the following:**

**Excess Business Auto Coverage Form**

The following is added to Section III. B. 3. Other Insurance:

Notwithstanding the foregoing, if other insurance as shown in the schedule is available to the insured for a loss we cover under this policy, this insurance is excess over that other insurance.

When this insurance is excess over other insurance shown in the schedule or any renewal thereof, we will pay only our share of the amount of the loss, if any, that exceeds the sum:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance;
(2) The total of all deductible and self-insured amounts under all that other insurance

if that sum is equal to or exceeds the "retained limit" shown in the Declarations of this policy. If that sum is less than the "retained limit", we will pay only our share of the amount of the loss, if any, that exceeds the "retained limit".

Nothing herein shall be construed to make this policy subject to the terms, conditions and limitations of other insurance.

22. Endorsement No. 35 to the ACE Policy states, in relevant part, as follows:

**ADDITIONAL INSURED NON-CONTRIBUTORY**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**EXCESS BUSINESS AUTO COVERAGE FORM**

**Schedule**

Name of Person or Organization: any person or organization for whom you are required by written contract or agreement, executed prior to loss, to provide primary insurance.

For organizations that are listed in the Schedule above that are also an Additional Insured under an endorsement attached to this policy, the following is added to Section III, B.3.

Other Insurance:

If other insurance is available to an insured we cover under any of the endorsements listed or described above (the "Additional Insured") for a loss we cover under this policy, this insurance will apply to such loss and we will not seek contribution from the other insurance available to the Additional Insured. However, we will only pay the Additional Insured for the "ultimate net loss" in excess of the "retained limit" shown in the Declarations.

23. The ACE Policy contains the following definitions in the Excess Business Auto Coverage Form:

### SECTION V – DEFINITIONS

**A.** "Accident" includes continuous or repeated exposure to the same condition resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

    **1.** A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

    **2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

\* \* \*

**F.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each "insured" who is seeking coverage or against whom a claim or "suit" is brought.

\* \* \*

**N.** "Retained limit" means the limit shown in the Declarations and is the amount you must pay before the Limits of Insurance become

applicable. In the event there is other insurance, whether or not applicable to an "accident", claim or "suit" within the "retained limit", you will continue to be responsible for the full amount of the "retained limit" before the Limits of Insurance under this policy apply. In no case will we be required to pay the "retained limit" or any portion thereof. "Retained Limit" does not include prejudgment interest, interest that accrues after entry of the judgment, nor any expenses incurred by the "insured" in the defense of any claim or "suit".

**O.** "Suit" means a civil proceeding in which:

   **1.** Damages because of "bodily injury" or "property damage"; or

   **2.** A "covered pollution cost or expense",

to which this insurance applies, are alleged.

\* \* \*

**R.** "Ultimate net loss" means the total amount the "insured" is legally obligated to pay as damages for a covered claim or "suit" either by adjudication or a settlement to which we agree in writing, and includes deductions for recoveries and salvages which have or will be paid. "Ultimate Net Loss" does not include any of the expenses incurred by the "insured" or us in connection with defending the claim or "suit".

24. The ACE Policy contains the following definition, as amended by Endorsement No. 19:

It is agreed that the Definition of "bodily injury" is deleted and replaced by the following:

"Bodily injury" means physical injury, sickness or disease sustained by a person, including:

   (1) death resulting from any of these at any time; or

   (2) mental injury that subsequently manifests itself after such physical injury, sickness or disease is sustained by a natural person.

11

**The Williams Lawsuit**

25. The Williams Lawsuit alleges that, on June 27, 2017, Judson Charles Williams ("Williams") was driving a motorcycle eastbound on Interstate 20 in Eastland, Texas, when a blown tire on the tractor-trailer driven by Jeffery Paul Meador ("Meador") struck Williams, causing injury. A true and accurate copy of the Third Amended Complaint filed in the Williams Lawsuit is attached hereto as Exhibit C.

26. The Williams Lawsuit alleges that, at the time of the incident, Meador was operating a tractor owned by and with the permission of Werner.

27. The Williams Lawsuit alleges that, at the time of the incident, the tractor was connected to a trailer owned by Family Dollar.

28. The Williams Lawsuit alleges that Family Dollar (i) negligently hired, trained, supervised, and retained Meador; (ii) negligently entrusted the trailer to Meador; (iii) negligent maintenance of the trailer; and (iv) negligence *per se*.

29. Arch is defending Family Dollar in the Williams Lawsuit.

## COUNT I – BREACH OF CONTRACT

30. The allegations set forth in paragraphs 1 through 29 above are re-alleged and incorporated as if fully set forth herein.

31. The Agreement provides that Werner must carry, at its own expense throughout the terms of the Agreement, a primary Truckers/Auto Liability insurance policy providing limits of $1 million ($1,000,000) per occurrence and naming Family Dollar as an additional insured on the Truckers/Auto Liability insurance policy.

32. In material breach of its obligations under the Agreement, Werner failed to procure a Truckers/Auto Liability insurance policy limits of $1 million ($1,000,000) per occurrence and naming Family Dollar as an additional insured.

33. Werner materially breached the Agreement by procuring only the ACE Policy, which fails to satisfy Werner's obligations under the Agreement in that it (1) is an indemnity-only policy that does not provide coverage for defense expenses incurred in the defense of a claim or lawsuit and (2) is excess to a $1 million ($1,000,000) "retained limit" that must be paid by Werner before the policy's limits of insurance became applicable.

34. As the result of Werner's breach of the agreement, Family Dollar has not had additional insured coverage available to provide it with a defense to the Williams Lawsuit or provide $1 million ($1,000,000) in primary indemnity coverage to Family Dollar for any judgment or settlement in the Williams Lawsuit.

35. As a result of Werner's material breach of the Agreement, Arch, which issued a business auto policy to Family Dollar, has incurred losses and damages because it provided Family Dollar with a defense to the Williams Lawsuit and settled the Williams Lawsuit on Family Dollar's behalf.

36. Additionally, the Agreement provides that Werner must indemnify, reimburse and hold harmless Family Dollar, its parent company, subsidiaries, and affiliates from and against all claims, damages, liabilities, losses, costs and expenses (including but not limited to reasonable attorneys' fees and expenses) sustained by Family Dollar by reason of bodily injury, sickness or death to third-parties to the extent arising out of, related to, or in any manner occasioned by (1) the negligence, gross negligence or willful misconduct of Werner or any of its officers, employees, agents, or affiliates or (2) any material breach by Werner of the Agreement.

37. Family Dollar has incurred damages, liabilities, losses, costs and expenses in the Williams Lawsuit arising out of, related to, or in any manner occasioned by the negligence, gross negligence, or willful misconduct of Werner and its officers, employees, agents, or affiliates, including but not limited to Meador.

38. Werner is required by the Agreement to indemnify, reimbursement and hold harmless Family Dollar, its parent company, subsidiaries, and affiliates in connection with the Williams Lawsuit.

39. Werner materially breached the Agreement by failing and refusing to indemnify, reimburse, and/or hold harmless Family Dollar, its parent company, subsidiaries, and affiliates for claims, damages, liabilities, losses, costs or expenses (including but not limited to reasonable attorneys' fees and expenses) incurred in the Williams Lawsuit.

40. Family Dollar has satisfied its obligations under the Agreement, including but not limited to any conditions precedent to Werner's obligations under the Agreement.

WHEREFORE, Arch, individually and as subrogee of Family Dollar, respectfully requests that judgment be entered in its favor and against Werner in an amount as yet to be determined, as necessary to fully compensate Arch and Family Dollar for Werner's material breach of the Agreement, including:

   a. All costs and expenses incurred or to be incurred by Family Dollar and Arch with respect to the defense and investigation of the Williams Lawsuit;

   b. All other sums incurred or to be incurred by Family Dollar and Arch with respect to the Williams Lawsuit, including but not limited to costs incurred in settlement of the Williams Lawsuit;

   c. Attorneys' fees, costs and expenses, and other disbursements in this action;

    d.        Pre- and post-judgment interest and court costs; and

    e.        Such other relief as this Court deems appropriate.

**ARCH INSURANCE COMPANY**

**By:**    /s/John B. Mumford, Jr.
           **Counsel**

John B. Mumford, Jr. (VSB No.: 38764)
Victoria D. Pretlow (VSB No.: 94950)
HANCOCK, DANIEL & JOHNSON, P.C.
4701 Cox Road, Suite 400
Glen Allen, Virginia 20360
jmumford@hancockdaniel.com
vpretlow@hancockdaniel.com
Telephone: (804) 967-9604
Facsimile: (804) 967-9888
*Counsel for Arch Insurance Company*